653 F.2d 121
 81-2 USTC P 9542
 UNITED STATES of America and Donald L. Benninger, Agent,
Internal Revenue Service, Appellees,
v.
John DAFFIN, Appellant,
and
Samuel F. D'Annunzio, President & Treasurer of S. & J.,
Inc., and the S. & J., Inc.; Samuel F. D'Annunzio,
Individually; William S. Vac; Robert E. Ferris; Frank Musci;
Union National Bank of Clarksburg; The Lowndes Bank, Defendants.
 No. 80-1793.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 7, 1981.
Decided July 10, 1981.
 
 David J. Romano, Clarksburg, W. Va. (Young, Morgan & Cann, Clarksburg, W. Va., on brief), for appellant.
 Charles E. Brookhart, Washington, D. C. (Michael L. Paup, Helen M. Marinak, Tax Division, Dept. of Justice, John F. Murray, Acting Asst. Atty. Gen., Washington, D. C.; Stephen G. Jory, U. S. Atty., Elkins, W. Va., on brief), for appellees.
 Before WINTER, Chief Judge, BRYAN, Senior Circuit Judge, and BUTZNER, Circuit Judge.
 WINTER, Chief Judge:
 John G. Daffin appeals from orders of the district court enforcing seven Internal Revenue Service summonses and ordering Daffin to transfer certain records to permit his accountant to comply with one of the summonses. Finding no merit in Daffin's various challenges to those orders, we affirm.
 The investigation of Daffin originated through the Special Enforcement Program of the Criminal Investigation Division of the IRS after IRS received an informant's tip that Daffin had received income from wagering. From October 1979 through January 1980, Special Agent Donald L. Benninger of the Criminal Investigation Division issued seven summonses requesting production of documents and testimony related to Daffin's finances. Pursuant to instructions from Daffin, the recipients of the summonses declined to comply. The government then filed six petitions for enforcement pursuant to 26 U.S.C. § 7604. Daffin intervened in each case as permitted by 26 U.S.C. § 7609, contending the investigation was initiated in bad faith with no proper purpose of pursuing civil tax liability. The district court consolidated the cases, conducted three evidentiary hearings and ordered enforcement of each summons.I.
 Daffin's major contention on appeal is that IRS issued the summonses in bad faith for the sole purpose of obtaining evidence for criminal prosecution and that the district court misapplied the standard for determining bad faith established by the Supreme Court in United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). LaSalle prescribed a two-fold test for defining the bounds of permissible good-faith uses of IRS summonses. The Court first established a "prophylactic," objective test of good faith. Under that standard, no summons can be enforced after the IRS has referred a case to the Department of Justice for potential prosecution. 437 U.S. at 311-13, 98 S.Ct. at 2364-2366. Daffin does not contend that any such referral has taken place in his case.
 LaSalle's second test for good faith, on which Daffin relies, applies where a summons issues prior to referral to the Justice Department. At that stage of investigation, the party opposing enforcement of the summons, the Court held, must bear the burden of "disprov(ing) the actual existence of a valid civil tax determination or collection purpose" by the IRS. 437 U.S. at 316, 98 S.Ct. at 2367. In short, the investigation will be permitted unless "solely criminal in nature," a situation representing "an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil penalties." Id. at 314, 98 S.Ct. at 2366. Making the opposing party's task even more difficult, the Court held that a valid civil purpose cannot be disproved simply by showing that the Special Agent in charge of the case is interested solely in criminal investigation. Since the agent's decision to prosecute can be abandoned by his superiors at any of a number of stages in the IRS hierarchy, bad faith can be shown only through "an examination of the institutional posture of the IRS." 437 U.S. at 316, 98 S.Ct. at 2367. The key question is whether IRS has made an "institutional commitment" to refer the case for prosecution and is delaying referral simply to gather additional evidence of criminal activity. Id. at 317, 98 S.Ct. at 2368.
 Daffin argues first that the district court simply failed to apply the second step in the LaSalle analysis. The record refutes this contention. At one point in the first hearing, the district judge quoted at length from that portion of the LaSalle opinion setting forth the second, "institutional good faith" test. Recognizing the existence of that test, the district court ruled simply that Daffin had produced no evidence to meet it. Moreover, the mere fact that the district court held three hearings and permitted Daffin's counsel to inquire into more than the question of referral to the Justice Department indicates that it recognized the second tier of the LaSalle test.
 Daffin next argues that, if the district court applied the second step in LaSalle's institutional good faith test, it erred in relying solely on the testimony of the agent in charge of the investigation that he had not decided whether to recommend the case for prosecution. This argument misconceives the basis of the "institutional good faith" test. LaSalle held that the subjective motivation of an individual agent, who believed his investigation was aimed solely at gathering evidence for criminal prosecution, could not establish the bad faith of the IRS as an institution, since an individual agent's decision to prosecute is subject to several layers of review within the IRS. Agent Benninger testified at Daffin's first hearing that, under IRS procedure, he would initiate any recommendation to prosecute the case and his recommendation would then be considered by his superiors. Benninger also testified that his investigation was far from complete and that he had not yet made a decision to recommend the case for prosecution. Given an institutional structure where the decision to prosecute is made from the bottom up, no institutional commitment to prosecute could exist before the agent at the bottom had initiated the recommendation process. As the Fifth Circuit has noted, "A logical conclusion to be drawn from LaSalle, is that before the investigating agent completes his investigation the summons is 'virtually unassailable' as far as the sole criminal purpose defense is concerned." United States v. Harris, 628 F.2d 875, 882 (5 Cir. 1980).
 Daffin argues that his failure to produce evidence of bad faith results primarily from the district court's improper limitation of his questioning and of his efforts at discovery. Most of the questions which the district court refused to permit sought to discover the nature and sources of evidence in the possession of IRS which related to unlawful activity by Daffin. Daffin apparently hoped to show that the IRS possessed sufficient evidence to recommend the case to the Justice Department, but refrained from doing so in order to gather more evidence for the prosecution.
 
 
 1
 Given the summary nature of summons enforcement proceedings, we do not believe the district court abused its discretion in limiting this line of questioning, since the point Daffin sought to make would not have improved his position materially. LaSalle does not hold that IRS must recommend a case for prosecution as soon as the evidence suggests prosecution could be undertaken. It permits IRS to continue its investigation, even when criminal prosecution is one of its acknowledged objectives, as long as civil objectives have not been wholly abandoned.
 
 
 2
 On several occasions Daffin requested and was denied an opportunity to depose Agent Benninger and his superiors. We do not believe the district court abused its discretion in denying those requests, particularly in light of the fact that Daffin was permitted to examine Benninger and his supervisor in an adversary hearing. It is clearly within the discretion of a district judge to limit the normal application of the discovery rules in an IRS summons enforcement proceeding. United States v. Harris, 628 F.2d 875, 880 (5 Cir. 1980). It has been widely held that in-court examination of the IRS agent is the "substantial equivalent" to a deposition. Id. at 883.
 
 
 3
 Likewise we do not believe the district judge abused his discretion in refusing to undertake an in camera inspection of IRS files in order to determine bad faith. This court has counseled that the use of in camera inspection procedures "must be carefully tailored to prevent delay of 'summons enforcement proceedings while parties clash over, and judges grapple with, the thought processes of each investigator.' " United States v. Equitable Trust Co., 611 F.2d 492, 502 (4 Cir. 1979), quoting LaSalle, supra, 437 U.S. at 316, 98 S.Ct. at 2367. Here the district judge heard the testimony of the agent in charge of the investigation and found him to be a credible witness. That credibility determination is unassailable on appeal; and having made that determination, the district court, within its discretion, could properly refuse to probe further by examining the agent's files.
 
 II.
 
 4
 As part of its prima facie case in summons enforcement proceedings, the IRS must show that requested materials are not already in its possession. United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964). Daffin argues that portions of one summons which call for the production of copies of his state and federal tax returns retained by his accountant seek materials already in IRS files. IRS argues that it seeks the retained copies of returns prepared by the accountant in order to determine whether they are the same as those filed by the taxpayer. Given the possibility that a taxpayer may alter a return after it is prepared by his accountant, the district court could properly conclude that the information sought was not already in the possession of the IRS.
 
 III.
 
 5
 Daffin contends next that, if the summonses are enforced, he is entitled to be present and to cross-examine witnesses when questioned by Agent Benninger. We find no merit in this claim. Two courts of appeals have rejected precisely the same argument in IRS summons enforcement proceedings, United States v. Traynor, 611 F.2d 809, 811 (10 Cir. 1979); United States v. Newman, 441 F.2d 165, 173-75 (5 Cir. 1971), and the Supreme Court has rejected claims similar to Daffin's in the context of other administrative investigatory proceedings, In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957).
 
 IV.
 
 6
 The district court ordered that certain documents now in Daffin's possession, but which were held by Robert Ferris, his accountant, at the time the summons was served on Ferris, be returned to Ferris to permit him to comply with the summons. Documents possessed by a taxpayer's accountant when a summons is served are not subject to taxpayer's Fifth Amendment privilege, and the transfer of the documents to the taxpayer after service of the summons cannot serve retroactively to make the privilege applicable. Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Daffin argues, however, that Couch provides a narrow exception to this rule where possession by the accountant is only "temporary" or "insignificant." He also contends that the district court erred in refusing to permit him to develop the factual basis for his Fifth Amendment claim.
 
 
 7
 Based on the rather limited testimony of Ferris, it appears that Daffin's reliance on Couch is misplaced. The documents here in question appear to be precisely the sort of materials found not to be privileged in Couch : records of income turned over to an accountant for the purpose of preparing tax returns. Daffin did not develop how any particular document sought by IRS fitted within the narrow exception provided by Couch. Although Daffin's counsel had an opportunity to examine Ferris when he testified during the enforcement proceedings, he made no attempt to develop a factual basis for his claim of privilege. Under these circumstances, we are not persuaded that remand of this case for further factual development is necessary.
 
 
 8
 AFFIRMED.